No. 22-1324

IN THE

# United States Court of Appeals for the Federal Circuit

APPLE INC.,

*Appellant,*

*v.*

COREPHOTONICS, LTD.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board No. IPR2020-00877

## REPLY BRIEF OF APPELLANT APPLE INC.

James Anglin Flynn
Mark S. Davies
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
(202) 339-8400

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................. 4

    I.    The Board Erred In Concluding That May Does Not Teach Mounting Image Sensors On Separate Printed Circuit Boards. ....................................................... 4

        A.    May teaches separate circuit boards. ...........................5

        B.    Dr. Sasián's testimony confirms May's teaching of separate circuit boards. ...................................9

        C.    The Board's findings are not salvaged by its non-planar theory. ............................................ 12

    II.    The Board Erred In Concluding That There Was No Motivation To Combine May With The Other Prior Art. ..... 16

        A.    May's teaching is not limited to folded lens assemblies. .................................................. 17

        B.    The Board erred in rejecting Dr. Sasián's testimony as conclusory. ........................................ 20

    III.    There Are No Relevant Technical Disputes. ....................... 23

CONCLUSION ......................................................................... 25

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
   949 F.3d 1366 (Fed. Cir. 2020) ..................................................... 11, 12

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ..................................................... 22, 23

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012) ........................................................ 18

*Belden Inc. v. Berk-Tek LLC*,
   805 F.3d 1064 (Fed. Cir. 2015) ...................................................... 2, 19

*In re Boe*,
   355 F.2d 961 (CCPA 1966) ................................................................ 8

*In re Burckel*,
   592 F.2d 1175 (CCPA 1979)............................................................... 8

*Comaper Corp. v. Antec, Inc.*,
   596 F.3d 1343 (Fed. Cir. 2010) ........................................................ 19

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
   838 F. App'x 555 (Fed. Cir. 2021) ..................................................... 13

*Consol. Edison Co. of N.Y. v. NLRB*,
   305 U.S. 197 (1938)......................................................................... 15

*Cutsforth, Inc. v. MotivePower, Inc.*,
   636 F. App'x 575 (Fed. Cir. 2016) ....................................................... 7

*Ethicon LLC v. Intuitive Surgical, Inc.*,
   No. 2020-1528, 2021 WL 3716397 (Fed. Cir. Aug. 23, 2021)............. 11

*In re Gurley*,
   27 F.3d 551 (Fed. Cir. 1994) .............................................................. 7

*In re Heck*,
    699 F.2d 1331 (Fed. Cir. 1983) ........................................................ 18

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017) ................................................... 7, 15

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 784 (Fed. Cir. 2021)................................................. 3, 16, 22

*In re Lamberti*,
    545 F.2d 747 (CCPA 1976) ............................................................. 18

*In re Lemelson*,
    397 F.2d 1006 (CCPA 1968)............................................................ 18

*Merck & Co. v. Biocraft Labs., Inc.*,
    874 F.2d 804 (Fed. Cir. 1989) .......................................................... 8

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
    38 F.4th 1013 (Fed. Cir. 2022)......................................................... 8

*In re NuVasive, Inc.*,
    842 F.3d 1376 (Fed. Cir. 2016) ............................................. 2, 7, 10

*In re Sullivan*,
    498 F.3d 1345 (Fed. Cir. 2007) ...................................................... 11

*TQ Delta, LLC v. Cisco Sys., Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019) ...................................................... 13

*In re Van Geuns*,
    988 F.2d 1181 (Fed. Cir. 1993) ...................................................... 20

# INTRODUCTION

Corephotonics responds to Apple's arguments on appeal by reciting the reasoning in the Board's final written decision, but its brief does not resuscitate the Board's conclusions from the flaws Apple has identified. On the two key issues in this appeal—the scope of the prior art and the motivation to combine—the Board ignored or improperly rejected Apple's evidence, including key language from the prior art and unrebutted testimony from Apple's expert, Dr. José Sasián. On appeal, Corephotonics provides no reason to overlook those errors and sustain the Board's decision.

On the scope of the prior art, the core issue is whether the May reference fairly teaches a person of ordinary skill in the art that image sensors may be mounted on separate circuit boards. There is no dispute that May teaches that image sensors *can* be positioned on a *common* circuit board. *See* Opening Br. (OB) 18 (citing Appx1568 (10:14-16)); Answering Br. (AB) 9 (same). But in the same breath May *also* teaches that image sensors can be positioned on *separate* circuit boards. Both May itself—and Dr. Sasián's testimony about how a skilled artisan would understand May—establish this separate printed circuit board

1

teaching. Specifically, May describes "some embodiments" with a common circuit board, Appx1568 (10:14-16), language with which the Board inexplicably failed to engage, *see* Appx51-55. *But see In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) (explaining that the Board cannot "reject arguments without explaining why"). And Dr. Sasián confirms that a skilled artisan would understand this "some embodiments" language in May to teach the use of separate circuit boards in the alternative. *E.g.*, Appx2479-2480 (¶¶ 23-24). Like the Board, Corephotonics attempts to dispute this reality by inventing a theory of orienting the image sensors in some non-planar fashion—a theory that is as bereft of record evidence now as it was before the Board.

On motivation to combine, Dr. Sasián described several detailed technical reasons a skilled artisan would have combined May's separate circuit board teaching with the other prior-art references. *E.g.*, Appx2481-2482 (¶¶ 26-27). Corephotonics attempts to limit that teaching to a particular embodiment in May, contrary to this Court's instruction that prior-art teachings are not limited to the embodiments in which they arose. *See, e.g., Belden Inc. v. Berk-Tek LLC*, 805 F.3d

1064, 1076 (Fed. Cir. 2015). And Corephotonics's attempt to paint Dr. Sasián's testimony as conclusory is no more persuasive than the Board's. Dr. Sasián's testimony easily passes the bar for expert opinion set by this Court's precedent. *See, e.g.*, *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021).

In short, the Board improperly ignored unrebutted expert testimony and argument that the prior art taught mounting image sensors on separate printed circuit boards. It then improperly rejected unrebutted expert testimony on motivation to combine, reasoning in contravention of this Court's precedent that the testimony was conclusory. The Court should reverse the Board's conclusion that claims 3 and 4 of U.S. Patent No. 10,288,840 are not unpatentable.[1]

---

[1] Corephotonics does not dispute (and therefore forfeits) that, if the Court agrees with Apple, it should reverse rather than vacate. *See* OB 2, 36-37; AB 27, 29, 34. Likewise, Corephotonics does not dispute that claim 4 stands or falls with claim 3; indeed, Corephotonics does not even address claim 4. *See* OB 36.

## ARGUMENT

I.  **The Board Erred In Concluding That May Does Not Teach Mounting Image Sensors On Separate Printed Circuit Boards.**

The Board overlooked key evidence and argument in determining that the May prior-art reference does not teach mounting image sensors on separate printed circuit boards. Viewed on its own, and as interpreted by Dr. Sasián's testimony, May fairly teaches a person of ordinary skill in the art *both* the use of a common circuit board *and* separate circuit boards. OB 17-22, 20 n.4; Appx2480 (¶ 24) ("[A] POSITA would understand that the camera subassemblies in May would not be mounted on a common circuit board.").

To avoid the impossible configurations that would result by mounting non-parallel image sensors in planar fashion on a single common circuit board, the Board invented a novel non-planar theory absent from the prior art and the record evidence. The Board identified no evidence to support that theory, and even now Corephotonics has mustered none. *See* OB 22-26; AB 24. The Board's mere theory is not substantial evidence and cannot salvage the Board's finding—which

4

depends on that theory—that May does not teach mounting on separate circuit boards.

## A.    May teaches separate circuit boards.

The parties agree that the first question presented to the Court is whether substantial evidence supports the finding that the May reference does not teach mounting image sensors on separate printed circuit boards. *See* OB 2-3, 16; AB 2-3, 19. Corephotonics tries to distract from this question about May by turning away from that prior art and instead dissecting the paragraphs of the declaration by Apple's expert, Dr. Sasián. *See* AB 20-24. *But see infra* at 8-11 (explaining Dr. Sasián's testimony). And Corephotonics contends that Apple's argument about May "rests entirely on the testimony of" Dr. Sasián. AB 20.

Not so. As Apple's brief explained (at 18), the May reference "makes plain" that it teaches mounting image sensors on separate printed circuit boards. May establishes this on its own, and Dr. Sasián's testimony merely confirms it. OB 18-22.

The Court can and should start with the May reference itself, which resolves this question on its face. May teaches that "in some

embodiments the sensors in the image capture assembly may be positioned next to each other on a common circuit board assembly." Appx1568 (10:14-16). The critical language is "in *some* embodiments." This caveat in May teaches—or at least makes obvious to a skilled artisan—that in *other* embodiments (even if not preferred embodiments), the sensors may be positioned on circuit board assemblies that are *not* common, i.e., on separate circuit boards. That should be the end of the matter.

How does Corephotonics explain this language? It doesn't. It refers to the relevant passage once, emphasizing other phrases, and then proceeds to ignore the "in some embodiments" phrase. AB 9. In doing so, Corephotonics repeats the precise error Apple identified in the Board's analysis: ignoring the key evidence rather than rebutting it. As Apple's opening brief explained, the "in some embodiments" language was consistently and expressly raised in the briefing at the Board. OB 24 (citing Appx193; Appx318; Appx339-340; Appx378). The Board summarized the argument but then failed to explain why it was rejecting it. *Id.* (citing Appx51-55). That is reversible error: "[I]t is not adequate to summarize and reject arguments without explaining why

the [Board] accepts the prevailing argument." *NuVasive*, 842 F.3d at 1383 (citing *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 578 (Fed. Cir. 2016)).

Corephotonics's only attempt to distinguish *NuVasive* is to point out that it dealt with a failure to explain a finding on motivation to combine, not a finding on the scope of the prior art. AB 28. But the legal principle—that agencies must explain themselves—applies to any and all Board findings, not just motivation. *E.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1045-46 (Fed. Cir. 2017) (applying *NuVasive* to finding about scope of the prior art).

Had the Board confronted the relevant language from May, it would have concluded that May teaches mounting on separate printed circuit boards. When a reference contemplates alternatives and indicates that one of those alternatives will be used in some embodiments, it necessarily also teaches that the *other* alternative can be used in *other* embodiments. *E.g.*, *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) (holding that a prior-art reference taught two alternatives even where one was "inferior"). This is akin to a negative limitation—i.e., *not* using a common circuit board—which this Court has explained

7

"need not be recited in the specification" expressly. *Novartis Pharms.*
*Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022).
Rather, such a limitation can be taught if there is "something in the
specification that conveys [the limitation] to a skilled artisan." *Id.* May
teaches that only some of its embodiments utilize a common circuit
board and, therefore, conveys the alternative limitation, as well.
Appx1568 (10:14-16).

It does not matter that May might prefer an embodiment with a
common circuit board. "The fact that a specific embodiment is taught to
be preferred is not controlling, since all disclosures of the prior art,
including unpreferred embodiments, must be considered." *Merck & Co.*
*v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) (cleaned up);
*accord In re Boe*, 355 F.2d 961, 965 (CCPA 1966). At bottom,
Corephotonics's argument and the Board's determination violate the
fundamental principle that "a reference must be considered not only for
what it expressly teaches, but also for what it fairly suggests." *In re*
*Burckel*, 592 F.2d 1175, 1179 (CCPA 1979); *accord Boe*, 355 F.2d at 965.

## B.    Dr. Sasián's testimony confirms May's teaching of separate circuit boards.

To the extent there is any doubt about what May teaches on its face (and there is not), Dr. Sasián's testimony filled in the gaps.  The Board improperly ignored the relevant evidence in this regard, too.

Dr. Sasián contextualized May's statement, explaining that a skilled artisan would have understood the "in some embodiments" language to suggest that "*other* embodiments" use separate circuit boards.  Appx2480 (¶ 24).  He also described the problem presented by May, where image sensors are not positioned in a single plane and, therefore, cannot be mounted in planar fashion on a single common circuit board.  Appx2475 (¶ 15).[2]  "Specifically, a POSITA would have understood that the image sensors being in different planes in May's embodiments shows that the image sensor on each subassembly is

---

[2] On this point, Corephotonics agrees:  In these embodiments, where the image sensors are in "different orientations," the sensors cannot be mounted in planar fashion to a "common printed circuit board."  AB 17.  Instead, if there is to be a common circuit board, Corephotonics posits that the sensors will be "perpendicular" to it.  *Id.  But see infra* at 12-15 (explaining that there is no evidence of non-planar, or perpendicular, mounting).

mounted on its own [printed circuit board]." *Id.* (emphases omitted); *accord* OB 20 & n.4 (collecting record citations).

With respect to this testimony from Dr. Sasián, the Board committed the same error it did with the relevant passage of May: It simply ignored the evidence and arguments. Again, this issue was raised repeatedly and expressly with the Board, but nowhere in its analysis does the Board explain why it disagrees with Dr. Sasián's testimony about the "in some embodiments" language. *See* Appx51-55. That is reversible error for the reasons described above (at 6-7). *See* OB 24-26; *NuVasive*, 842 F.3d at 1383.

Corephotonics does not dispute that the Board failed to consider the relevant language from May and Dr. Sasián's opinion interpreting it. Instead, Corephotonics attempts to excuse that failure by characterizing Dr. Sasián's testimony as conclusory. AB 20-21. But the Board did not determine that the relevant opinions were conclusory; it did not consider them at all. *Compare* Appx51-55, *with* Appx2479-2480 (¶¶ 23-24).

That is a critical error: As acknowledged in Apple's opening brief, the Board is not required to accept an expert's opinions blindly. But

when those opinions are non-conclusory and unrebutted, the Board must *at least* acknowledge them and explain why it is rejecting them. OB 24-26; *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2020-1528, 2021 WL 3716397, at *7 (Fed. Cir. Aug. 23, 2021) (unpublished) ("As there was no evidence disputing this expert testimony, the Board erred by not addressing it."). The Board's failure to "give any meaningful consideration" to May's "some embodiments" language—and Dr. Sasián's testimony about it—is fatal to the Board's findings. *In re Sullivan*, 498 F.3d 1345, 1352 (Fed. Cir. 2007).

Had the Board properly considered Dr. Sasián's testimony on this point, it would have discovered a non-conclusory opinion: namely, Dr. Sasián's close reading of May's text, Appx2479-2480 (¶ 23), and his opinion that a skilled artisan would have "underst[ood]" May's "some embodiments" language to convey the alternative, separate circuit board embodiment. Appx2480 (¶ 24).

Expert testimony is proper when it "shed[s] light on what a skilled artisan would reasonably understand or infer from a prior art reference." *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373 (Fed. Cir. 2020). And that testimony is sufficiently

11

"detailed" and non-conclusory when it "identifie[s] specific passages …
that a skilled artisan would recognize as disclosing" the element in
question. *Id.* at 1374. Dr. Sasián offered just this kind of opinion,
which the Board erred in ignoring.

### C. The Board's findings are not salvaged by its non-planar theory.

As described in Dr. Sasián's testimony and Apple's opening brief,
several embodiments in May contain image sensors that are not
positioned in the same plane. *E.g.*, OB 18-21. And the only kind of
mounting supported by the record evidence—indeed, the only kind of
mounting even *mentioned* in that evidence—is planar, i.e., where the
image sensor is mounted flat and flush against the circuit board.[3]
OB 16-18 (citing Appx2479 (Sasián ¶ 22); Appx1563 (May Fig. 24A);
Appx1584 (Ryu Fig. 6); Appx1335 (Parulski Fig. 16B)). Even
Corephotonics's Patent Owner Response demonstrated the ubiquity of

---

[3] As explained below (at 24), Corephotonics attempts to distinguish
between mounting the image sensor itself and mounting the image
capture assembly "as a whole." AB 6. Corephotonics does not explain
how this distinction is meaningful. And there is no evidence to support
mounting either the sensor or the entire assembly in any fashion other
than planar to the circuit board.

planar mounting, depicting a circuit board with "dozens of components"—each one mounted in planar fashion.  Appx320.

Dr. Sasián explained that a skilled artisan would have understood May's different-plane arrangement to have required mounting the sensors in planar fashion on separate circuit boards.  OB 20 & n.4 (collecting record citations).[4]

To get around this problem, the Board adopted a theory first presented in Corephotonics's surreply—namely, that the sensors positioned in different planes would be connected "in a non-planar fashion[] to a single circuit board" sitting behind the lenses and sensors.  Appx54 (emphasis omitted).  The problem, as Apple's opening brief

---

[4] Dr. Sasián's testimony was supported by the record evidence, the prior art, and an in-depth discussion of the problems and solutions presented by the same.  He described how and why planar mounting and separate circuit boards apply here.  It was nothing like the conclusory testimony in the cases cited by Corephotonics (at 27) that lacked any "express discussion of" or "any connection to" the relevant claim limitations.  *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1362 (Fed. Cir. 2019); *see also Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 555, 557 (Fed. Cir. 2021) (cleaned up) (affirming rejection of argument that "lacked explanation as to *how* or *why*"), *cert. denied*, 141 S. Ct. 2721 (2021).

explained, is that there is not a shred of evidence in the record to support this non-planar theory.  OB 22-23.

The Board offered only one citation to support the non-planar theory: Apple's argument that separate circuit boards—not image sensors—could be connected by flex connectors.  Appx54 (citing Appx490-491).  But the use of flex connectors between circuit boards is insufficient evidence to support their use to connect and perpendicularly orient the image sensors to those circuit boards. Rather, as Dr. Sasián explained, image sensors are consistently mounted to circuit boards in planar fashion throughout the prior art. *Supra* at 12; OB 4-5, 16-18.

Corephotonics's appellate brief does not fill in this gap.  If non-planar mounting were a genuine option—if Corephotonics thought it supported by the record—one would have expected Corephotonics to point to some prior art, some figure, or some testimony to support it. Instead, Corephotonics asks the Court to accept its non-planar theory with only a single, circular citation to the Board's decision—to support that decision itself.  *See* AB 24 (citing Appx54).  At the Board, rather than citing evidence, Corephotonics "submit[ted] that the world is full of

things that are electrically connected without being mounted flat against one another." Appx523. But Corephotonics did not, and still has not, pointed to a single such "thing" in this technical context, nor has it explained why image sensors could be such a thing.[5] And Corephotonics does not contend that this gap in the Board's reasoning can be filled by common sense or by teachings inherent in the prior art. *See* AB 24.

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). The Board's non-planar theory lacks even a scintilla of evidence to support it. At best, that theory rested on the argument of counsel alone, and "[a]ttorney argument is not evidence or explanation in support of a conclusion." *Icon*, 849 F.3d at 1046. *No* evidence is insufficient evidence. The Board was not entitled to substitute its own

---

[5] Similarly, Corephotonics's statement of the case asserts that "image sensors would be perpendicular to such a printed circuit board" without any citation to evidence that such a perpendicular orientation could be achieved nor any explanation of how. AB 17.

speculative theory for Dr. Sasián's unrebutted testimony.  *See* OB 26 (collecting cases).

## II.    The Board Erred In Concluding That There Was No Motivation To Combine May With The Other Prior Art.

Dr. Sasián explained that a skilled artisan would have looked to May and the other prior-art references (Parulski, Huang, and Tang) based on the shared figures and inventors of May and Parulski.  *E.g.*, OB 30; Appx2480 (¶ 25).  And he further explained that such an artisan would have been motivated to combine these references by specific concerns for device modularity, design flexibility, ease of repairs, and reduced customer costs.  *E.g.*, OB 27-28, 34-45; Appx1273-1274 (¶¶ 76-77); Appx2481-2482 (¶¶ 26-27).  The Board erred in rejecting this testimony as conclusory:  It readily satisfies this Court's standard for explaining "how and why a skilled artisan would have combined the references."  *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021); *accord* OB 28-31, 29 n.5.

Corephotonics objects to Apple's motivation-to-combine argument on two grounds.  First, that May's separate circuit board teaching is limited to folded lens assemblies.  Second, that Apple offered only conclusory evidence on motivation.  Both are mistaken.  There is no

16

basis to confine May's teaching to a specific embodiment, and

Dr. Sasián's testimony far exceeded this Court's standard for non-

conclusory motivation testimony.

## A.    May's teaching is not limited to folded lens assemblies.

Apple's opening brief (at 27) described the motivation issue as

whether a skilled artisan "would have been motivated to combine th[e]

prior art with May's teaching that the image sensors are mounted on

separate printed circuit boards."  Corephotonics suggests a different

question: whether a skilled artisan "would have been motivated by

purported implicit teachings of May concerning folded-lens cameras

with multiple printed circuit boards to modify the non-folded-lens

combination of" the other prior art.  AB 30.[6]

Corephotonics's framing of this issue gives away the game:  This

Court and its predecessor have held—consistently and

uncontroversially—that "[a] reference must be considered for

_____

[6] May teaches both non-folded configurations (where light passes in a straight line through the lenses to the image sensor) and folded configurations (where light is bent by mirrors or prisms before reaching the sensor).  OB 31-33.

everything that it teaches, not simply the described invention or a preferred embodiment." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012) (citing *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976)).

More specifically, Corephotonics contends that May's separate circuit board teaching arose in the context of folded-lens configurations, i.e., to address the problem of mounting image sensors positioned in different planes. *See* AB 31. And Corephotonics asserts that May's teaching must therefore be cabined to folded configurations. This argument runs head-on into the precedent just described. "It makes no difference … that [the prior art] dealt with a different specific problem, within [a] narrow area…. 'The use of patents as references is not limited to what the patentees describe as their own inventions or to the problems with which they are concerned.'" *In re Heck*, 699 F.2d 1331, 1332-33 (Fed. Cir. 1983) (quoting *In re Lemelson*, 397 F.2d 1006, 1009 (CCPA 1968)). Even if a teaching's "specific use was different" in the prior-art patent, "the broader disclosures of that patent were made known, were useful and were legally available." *Id.* at 1333.

Moreover, even if it were proper to draw such constraints from the prior art, May's separate circuit board teaching was not limited to folded configurations.  There is simply no evidence to suggest that the circuit board teaching was even correlated with the decision to fold lens assemblies, much less that it was meant to be confined to folded configurations.  OB 32-33; *see also Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015) (holding that a "problem and solution" related to wire alignment "d[id] not depend on" the distinct problem whether "the wires are insulated").

Finally, Corephotonics argues that May's folded embodiment "does not satisfy the other limitations of the claims."  AB 1-2.  "However, this standard governs anticipation, not obviousness.  Determining obviousness requires considering whether two or more pieces of prior art could be combined … to produce the claimed invention," not whether a single embodiment from the prior art satisfies all the limitations. *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1351-52 (Fed. Cir. 2010). And the claims of the '840 patent at issue have no limitation relating to the folded or non-folded nature of the device's lens assemblies.  By insisting that May's teaching cannot render its claims obvious,

Corephotonics effectively attempts to import a non-folded limitation into its claims. That attempt should be rejected. *E.g.*, *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993) ("The short answer is that claim 42 is not expressly limited to NMR or MRI apparatus.… Moreover, limitations are not to be read into the claims….").

## B. The Board erred in rejecting Dr. Sasián's testimony as conclusory.

Corephotonics does not dispute two of the reasons Apple and Dr. Sasián offered for combining May with the other prior art references, including Parulski. In particular, Corephotonics does not deny that May and Parulski share identical figures and two inventors, including Parulski. *See* OB 30; Appx2480 (¶ 25) ("The shared disclosure, figures, and inventors of Parulski and May would have motivated a POSITA to rely on the teachings of both patents….").

But Dr. Sasián's unrebutted testimony went much further: He offered a series of technological principles that would have motivated a skilled artisan to combine these references, including device modularity, design flexibility, ease of repairs, and reduced customer costs. OB 27-28, 34-35. And he explained in tangible terms how using May's separate circuit board teaching with the combination of the other

20

references advances those principles. By mounting each image sensor on its own circuit board (rather than a single common board), i.e., by making them modular, it would have been easier for device designers "to rearrange lenses to accommodate other components such as electronics, screens, and batteries within the confined space of the digital camera." Appx2481 (¶ 26) (quotation marks omitted). By dispensing with the notion that sensors must be mounted on a single board, designers could "use … wide-angle and telephoto lenses optimized for their specific purposes, without trying to align them on the same plane." *Id.* And this modularity would have increased the "ease of camera module replacement," reducing costs to customers because "it is cheaper to replace a camera module than to replace an entire camera device," as one would have to do if all the lens assemblies were mounted on a single circuit board. Appx2482 (¶ 27).

Corephotonics critiques Apple's arguments as lacking "evidence or explanation." AB 33. But Corephotonics ignores that Dr. Sasián's testimony *is* evidence—and unrebutted expert evidence at that. Corephotonics points to the same case relied on by the Board, *ActiveVideo*, which rejected expert testimony as conclusory. AB 32

(citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012)).  As Apple's opening brief explained, the conclusory testimony in *ActiveVideo* paled in comparison to the detail Dr. Sasián offered here.  OB 28-31, 29 n.5.  The *ActiveVideo* expert did not refer to "any specific combination of prior art elements," 694 F.3d at 1328, and "failed to explain how specific references could be combined," *id.* at 1327.  That expert testimony, like Dr. Sasián's, urged modularity as motivating.  But unlike Dr. Sasián's, the extent of the *ActiveVideo* reasoning was that "when I add one [module], it doesn't change the way the other one works."  *Id.*  That stands in stark contrast to Dr. Sasián's analysis, which articulated specific motivating principles (like customer cost-savings) and then explained in detail how the combination advanced those principles.[7]  *See* OB 29 (citing *Intel*, 21 F.4th at 797).

---

[7] To make Dr. Sasián's explanations appear conclusory, Corephotonics quotes single words from his testimony without any of the supporting context.  *See* AB 32 ("Dr. Sasián's testimony cites entirely generic 'motivations' of 'modularity,' 'ease of repair,' 'flexibility,' and 'cost,' without providing any evidence or meaningful explanation….").  Corephotonics conveniently ignores the passages of the testimony described above (at 20-21) where Dr. Sasián provides precisely the explanations Corephotonics claims are lacking.

The Board erred in rejecting Dr. Sasián's testimony as conclusory under *ActiveVideo*, and its determination should be reversed.

## III.   There Are No Relevant Technical Disputes.

Corephotonics's brief makes much of purportedly "incorrect" definitions and arguments in Apple's opening brief. AB 4. But nothing Corephotonics describes amounts to any technical dispute relevant to this appeal.

First, Corephotonics protests that "utilizing lenses with different focal lengths" would not "lead to image sensors located in different planes" as Apple argued. *Id*. But Corephotonics concedes that this "happens to be a true statement" in some cases, which belies any assertion that there is some technical dispute here. *Id*. Indeed, both focal length and total track length (TTL) can affect the overall length of the lens assembly—the parties agree on that point. *See* AB 4-6. That variability in the length of the lens assembly only underscores Apple's point: What matters is that "different lens assembly lengths" can cause image sensors to "sit in different parallel planes," as Apple's brief explained (at 6)—and Corephotonics does not dispute.

Second, Corephotonics suggests a dispute about a purported distinction between mounting "image sensors" and mounting "image capture assemblies." AB 6. But as demonstrated by all the many prior-art figures in Apple's brief, the image sensor *is* the element of the image capture assembly that is mounted to and sits flush against the circuit board. *See, e.g.*, OB 16 (May Fig. 24A, Appx1563); OB 17 (Ryu Fig. 6, Appx1584); OB 17 (Parulski Fig. 16B, Appx1335). The passage from May quoted in Corephotonics's brief establishes the same: "[T]he sensors in the image capture assembly may be positioned *next to each other on a common circuit board assembly*." AB 9 (emphasis changed) (quoting Appx1568 (10:14-16)). Even Corephotonics used this language before the Board, describing a "printed circuit board … that both *the sensors are mounted on*." Appx501 (emphasis added).[8] And even if Corephotonics had identified some relevant distinction, it never describes why it would matter.

---

[8] Corephotonics similarly "accept[ed] that there are sensors in the world that are mounted flat on printed circuit boards," Appx520, and it described May's Figure 24A as depicting image "sensors 614 and 618 in the same plane, mounted to a single circuit board," Appx381.

## CONCLUSION

Apple respectfully requests that this Court reverse (or, in the alternative, vacate and remand) the Board's conclusion that claims 3 and 4 of the '840 patent are not unpatentable.

Respectfully submitted,

*/s/ James Anglin Flynn*
James Anglin Flynn
Mark S. Davies
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
(202) 339-8400

*Counsel for Appellant*

October 14, 2022

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 4645 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ James Anglin Flynn*
James Anglin Flynn
*Counsel for Appellant*